# United States Court of Appeals for the Federal Circuit

2008-5031


THE CENTECH GROUP, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

TYBRIN CORPORATION,

Defendant-Appellee.


Kenneth A. Martin, The Martin Law Firm, PLLC, of McLean, Virginia, argued for plaintiff-appellant.

Steven M. Mager, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief was Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, Deborah A. Bynum, Assistant Director, and Arlene Pianko Groner, Trial Attorney. Of counsel on the brief was John G. Terra, Trial Attorney, Commercial Litigation Division, United States Air Force Legal Operations Agency, of Arlington, Virginia.

Jonathan D. Shaffer, Smith Pachter McWhorter PLC, of Vienna, Virginia, argued for defendant-appellee Tybrin Corporation. With him on the brief were John S. Pachter and Mary Pat Gregory.

Appealed from: United States Court of Federal Claims

Judge Mary Ellen Coster Williams

# United States Court of Appeals for the Federal Circuit

2008-5031

THE CENTECH GROUP, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

TYBRIN CORPORATION,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 07-CV-513, Judge Mary Ellen Coster Williams.

_____

DECIDED:  February 3, 2009

_____

Before RADER, SCHALL, and PROST, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Centech Group, Inc. ("Centech") brought suit in the United States Court of Federal Claims seeking declaratory and injunctive relief in connection with the decision by the Department of the Air Force ("Air Force") to solicit revised proposals for the services contract previously awarded to Centech.  The Court of Federal Claims denied Centech's request.  In so doing, it held that the Air Force's action was not arbitrary,

capricious, or an abuse of discretion. It arrived at that holding after concluding that Centech's original proposal for the contract was not acceptable because it did not comply with a statutory requirement for award and a material provision of the solicitation. Centech Group, Inc. v. United States, 79 Fed. Cl. 562, 577 (2007). Centech now appeals the court's decision. We affirm.

BACKGROUND

I.

The pertinent facts are not in dispute. On February 28, 2005, the Air Force issued a request for proposals ("RFP") for advisory and assistance services to support the Aerospace Research, Development, Test, and Evaluation Activities ("ARDTEAS") at the Air Force Flight Test Center at Edwards Air Force Base in California. Id. at 564–65.

The ARDTEAS procurement was a small business set aside. Id. at 565. Under the Small Business Act, 15 U.S.C. §§ 631–657f, 657i–657o, a party may not be awarded a contract as a small business concern unless it agrees that, "in the case of a contract for services (except construction), at least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern." 15 U.S.C. § 644(o)(1)(A) (2006). The Limitation on Subcontracting ("LOS") clause, set forth at 48 C.F.R. § 52.219-14 (2008), implements the mandate of the Act. The LOS clause requires an offeror to agree that at least 50 percent of its personnel costs under the contract will be based upon work of its own employees. 48 C.F.R. § 52.219-14. The clause states:

> (b) By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for—

> (1) Services (except construction). At least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern.

Id. The RFP incorporated the LOS clause by reference. Centech, 79 Fed. Cl. at 565.

The Air Force disclosed to prospective offerors for the ARDTEAS contract that it would interpret the LOS clause in accordance with Air Force Policy Memorandum 2004-PK-007 (the "Policy Memorandum"). Id. at 566. Accordingly, prior to issuing the RFP, on August 20, 2004, the Air Force electronically transmitted the Policy Memorandum to prospective offerors. Id. The transmission stated in pertinent part as follows:

1. FAR Clause 52.219-14, Limitations on Subcontracting (Dec. 1996), which applies to . . . small business set-aside contracts, states the small business prime contractor must perform specified minimum amounts of work, when the contract has been set aside for [a] small business. . . .

2. [W]ithin [Air Force Material Command], we interpret the clause at 52.219-14 to mean that the minimum amounts of work can be performed by the collective efforts of either small business members of a formal joint venture or a small business prime contractor together with the first tier small business subcontractor(s), when the circumstances outlined in attachment 1 are present.

Id. at 566–67 (quoting the Policy Memorandum (footnotes omitted)). Attachment 1 to the Policy Memorandum stated that "[p]rime-subcontractor teams could be a mix of large business and small business subcontractors [so long as] performance of work requirements [was] met by the cooperative efforts of the small prime contractor and the small business members of the subcontractor group." Id. at 567 n.7 (quoting Attachment 1). In short, according to the Policy Memorandum, a small business prime contractor could meet the requirements of the LOS clause if at least 50 percent of the cost of contract performance incurred for personnel was based upon the work of

employees of the small business prime contractor alone, or in combination with the work of employees of small business subcontractors with which the prime contractor entered into a cooperative effort.

Four offerors, including Centech and the incumbent contractor, Tybrin Corporation ("Tybrin"), submitted proposals in response to the RFP. Id. Centech proposed to apportion the work between its own employees and those of subcontractors, including a large and a small business. Id. More specifically, relying on the Policy Memorandum in structuring its proposed cost/price model, Centech planned to incur itself 43.2 percent of the total cost of contract personnel using its own employees. The proposal indicated, however, that Centech would combine the efforts of its own employees and small business subcontractor employees so that the resulting combined personnel costs would exceed 50 percent of the personnel costs incurred in performing the contract work. Id.

After offers were submitted, the Air Force's Source Selection Evaluation Team ("SSET") evaluated Centech's proposal for compliance with the LOS clause. The SSET determined that, based on its proposal, Centech would and could comply with the LOS clause. On April 28, 2006, the Air Force awarded the ARDTEAS contract to Centech. Id. at 568. Centech's awarded contract incorporated the LOS clause by reference. Id.

On May 26, 2006, Tybrin protested the award of the contract to the Government Accountability Office ("GAO"),[1] claiming that the Air Force had failed to evaluate submitted proposals in accordance with the RFP's stated evaluation criteria. Id. Subsequently, on June 29, 2006, Tybrin filed a supplemental protest with GAO, claiming

---

[1] The Competition in Contracting Act of 1984, 31 U.S.C. § 3551–56 (2006), gives GAO authority to decide bid protests.

that the Air Force should have disqualified Centech's proposal for noncompliance with the LOS clause. Id. Responding to Tybrin's Supplemental Protest, the Air Force conceded that Centech proposed that its own employees would account for only 43.2 percent of the cost of contract performance. Id. The Air Force stated, however, that Centech's proposal complied with the LOS clause as interpreted by the Policy Memorandum, because the collective efforts of the personnel from Centech and its small business subcontractors would exceed 50 percent of the cost of contract performance for personnel. Id.

After receiving Tybrin's supplemental protest, GAO sought the views of the Small Business Administration ("SBA"). Id. Responding, the SBA took the position that, in accordance with 15 U.S.C. § 644(o)(1)(A) and its own regulation, see 13 C.F.R. § 125.6(a)(1) (2008), a small business receiving a set-aside contract must agree to meet by itself the requirements of the LOS clause. Centech, 79 Fed. Cl. at 568. The SBA's regulation states that a small business must agree that, "[i]n the case of a contract for services (except construction), the concern will perform at least 50 percent of the cost of the contract incurred for personnel with its own employees." 13 C.F.R. § 125.6(a)(1).

On August 4, 2006, the Air Force stayed performance of Centech's contract while it reconsidered whether Centech met the conditions of the RFP. Centech, 79 Fed. Cl. at 569. Accordingly, that same day, GAO dismissed all of Tybrin's protests as moot. Id. Six days later, the Air Force retracted the Policy Memorandum. Id. On August 17, 2006, Centech notified the contracting officer by mail that, while its initial cost proposal was consistent with the Policy Memorandum, it, by itself, had already performed work

accounting for more than 51 percent of the personnel costs under the contract to date and would continue to do so, as reflected in updated cost models which it submitted to the Air Force. Id.

On September 6, 2006, the contracting officer issued a "Determination of Non-Responsibility." Id. In the determination, the contracting officer explained that, based on Centech's proposal indicating that work of its employees would account for only 43.2 percent of personnel costs under the contract, Centech did not meet the subcontracting limitation requirements set forth in the statute and regulation. Id. For that reason, the contracting officer considered Centech ineligible to receive the ARDTEAS contract. Twelve days later, Centech challenged the contracting officer's determination. Id. In particular, Centech contended that the contracting officer had erred by refusing to consider the new information it had submitted in the form of updated cost models. Id.

On September 15, 2006, the Air Force referred the matter of Centech's "responsibility" to the SBA under the SBA's Certificate of Competency ("COC") Program. The COC Program is authorized by the Small Business Act. See 15 U.S.C. § 637(b)(7)(A) (2006). A COC is a written instrument issued by the SBA to a government contracting officer. It certifies that a small business concern possesses the responsibility to perform a specific procurement contract. See 13 C.F.R. § 125.5(a)(1) (2008). By regulation, "[w]hen a solicitation requires a small business to adhere to the limitations on subcontracting, a contracting officer's finding that a small business cannot comply with the limitation shall be treated as an element of responsibility and shall be subject to the COC process." 48 C.F.R. § 19.601(d) (2008); see also 13 C.F.R.

§ 125.6(f) (stating that "[c]ompliance [with the LOS clause is] considered an element of responsibility and not a component of size eligibility").

On September 29, 2006, Centech responded to the SBA's request for information by providing a chart that showed how it would meet the LOS requirement. Centech, 79 Fed. Cl. at 570. Other documents provided to the SBA by Centech included narratives, a compliance matrix, and spreadsheets. Id. Together, these submissions reflected that Centech had changed its previously proposed mix of prime and subcontractor labor costs. Id. at 571.

By letter dated December 4, 2006, the SBA informed the contracting officer that, notwithstanding what was stated in Centech's proposal, the SBA had concluded that Centech would comply with the subcontracting limitation during its performance of the contract, and that the SBA had found Centech responsible and had issued a COC to Centech. Id. at 570. On December 21, 2006, the Air Force reinstated the award to Centech based on the SBA's issuance of the COC. Id. at 571. Shortly thereafter, on December 29, 2006, Tybrin protested to GAO the Air Force's reinstatement of the award to Centech, claiming that the Air Force should have found Centech's proposal unacceptable because, in the proposal, Centech did not offer to comply with the LOS clause. Id.

On March 13, 2007, GAO sustained Tybrin's protest. In re Tybrin Corp., 2007 Comp. Gen. (West) ¶ 51, at 1 (Mar. 13, 2007). In its decision, GAO began its analysis by stating that, "[a]s a general matter," an agency's judgment as to whether a small business offeror will be able to comply with a subcontracting limitation presents a

question of responsibility for review by the SBA.[2]  Id. at 5.  GAO noted, however, that it had "consistently held that where a proposal, on its face, should lead an agency to the conclusion that an offeror has not agreed to comply with the subcontracting limitation, the matter is one of the proposal's acceptability."[3]  Id.  GAO further noted that it had "long held that a proposal that fails to conform to a material term or condition of the solicitation, including the subcontracting limitation, is unacceptable and may not form the basis for an award."  Id.  On that basis, GAO concluded that, "[g]iven the Air Force's determination that Centech's proposal failed to comply with a material term of the solicitation (the subcontracting limitation) and, accordingly, that the proposal could not form the basis for award under the RFP, the agency should have found Centech's proposal to be unacceptable, rather than finding Centech nonresponsible and forwarding the matter to the SBA for its consideration."  Id. at 6.

GAO acknowledged the SBA's disagreement with its (GAO's) view that where a proposal, on its face, should lead the contracting agency to the conclusion that an offeror has not agreed to comply with the subcontracting limitation, the matter is one of

---

[2]     Responsibility refers to an offeror's apparent ability and capacity to perform all contract requirements and is determined, not at proposal opening, but at any time prior to award of the contract based on any information received by the agency up to that time.  See 48 C.F.R. § 9.105-1 (2008) (providing details as to the information considered in a responsibility determination).

[3]     As explained below, "acceptability" refers to the matter of whether, in a proposal, an offeror agrees to provide what is called for by the solicitation or request for proposals.  "Acceptability" is thus distinct from "responsibility," which relates to the offeror's ability to perform.  As seen above, the Air Force issued a "Determination of Non-Responsibility," in which it found Centech ineligible for the ARDTEAS contract.  However, the determination, which was based on Centech's proposal to incur itself 43.2 percent of employee costs under the contract, actually was a finding that Centech's proposal was not acceptable.

the proposal's acceptability, rather than the offeror's responsibility.  Id.  Rejecting the

SBA's position, GAO stated:

> [T]he issue here does not concern whether a bidder or offeror can or will comply with the subcontracting limitation requirement during performance of the contract (where we recognize that the matter is one of responsibility (or, in certain cases, contract administration . . .)), but rather, whether the bidder or offeror has specifically taken exception to the subcontracting limitation requirement on the face of its bid or proposal.  Given that the determination in this latter, limited circumstance involves the evaluation of a bid or proposal for compliance with a material term of the solicitation, the determination is one of responsiveness or acceptability, rather than responsibility.

Id. at 6–7.  GAO concluded by recommending "that the Air Force reopen discussions

and request and review revised proposals, evaluate those submissions consistent with

the terms of the solicitation, and make a new source selection decision."  Id. at 7.

On March 23, 2007, the SBA requested reconsideration of GAO's decision.

Centech, 79 Fed. Cl. at 572.  The SBA took issue with GAO's statement in In re Tybrin,

97-2 Comp. Gen. (West) at 6, that "the record establishes that it was clear to the Air

Force that Centech's proposal as submitted and as evaluated provided that 43.2

percent of the cost of contract performance incurred for personnel would be expended

for Centech employees, and, accordingly, that [Centech] 'did not meet the

subcontracting limitation requirements set forth in statute and regulation.'"  The SBA

contended that it was never clear to the Air Force whether Centech's proposal met or

did not meet the limitation, arguing that "it is not uncommon for contracting officers and

procuring agencies to misunderstand the limitations on subcontracting requirements

and how to calculate the requirement."  The SBA maintained that the referral to the

SBA, an expert in the subcontracting limitations, was therefore appropriate.

GAO denied SBA's request on April 17, 2007. In its denial, GAO stated that it found unpersuasive SBA's suggestion that the Air Force did not understand the subcontracting limitation. In re Small Bus. Admin.—Reconsideration, No. B-298364.8 (Comp. Gen. Apr. 17, 2007). GAO read the record as a whole to be replete with statements evidencing the Air Force's understanding and its recognition that Centech's proposal did not meet the subcontracting limitation requirements. Id. GAO found that the SBA failed to set out any factual or legal grounds that would warrant reversal or modification of its decision, as required by GAO's standard for reconsideration. Id.

In response to GAO's recommendation, the Air Force issued an amendment to the solicitation requesting revised proposals. Centech, 79 Fed. Cl. at 573. All four original offerors, including Centech, submitted revised proposals on July 31, 2007. The revised proposals were under consideration on October 6, 2008, the date of oral argument before us. Oral Arg. at 8:15–8:47, available at http://oralarguments.cafc.uscourts.gov/ (search case no. 2008-5031).

II.

On July 9, 2007, Centech filed suit in the Court of Federal Claims, seeking reinstatement of its original award and a declaration that the Air Force's decision to follow GAO's recommendation and take corrective action was arbitrary, capricious, and an abuse of discretion. Centech, 79 Fed. Cl. at 574–75. Centech asked the court to enjoin the Air Force from expending any funds for the services contemplated by the ARDTEAS procurement except under the contract originally awarded to Centech. Id. at 575. Tybrin intervened in the suit. Id. at 573 n.2.

Centech argued that the Air Force irrationally followed GAO's recommendation, where GAO mischaracterized the matter of LOS compliance as one of acceptability as opposed to post-award contract administration. Id. at 575. As seen, the Air Force took corrective action based upon GAO's determination that Centech's proposal was unacceptable because it failed to meet the requirement of the LOS clause. Id. at 572. According to Centech, compliance with the LOS clause was not required to be evaluated as a condition for award, but instead should have been examined after award, once the Air Force's actual requirements were defined. Id. at 575. Under Centech's theory, its representation in its proposal that it would perform only 43.2 percent of the labor itself did not render its proposal unacceptable because its failure to meet that clause was not a failure to meet a mandatory, material requirement of the solicitation, but was a matter of post-award contract administration. Id.

Pursuant to Court of Federal Claims Rule 52.1, Centech and Tybrin and the government filed cross-motions for judgment on the administrative record regarding the Air Force's decision to follow GAO's recommendation. The Court of Federal Claims denied Centech declaratory and injunctive relief, holding that the Air Force had been justified in following GAO's recommendation. Id. at 577. The court first pointed out that 15 U.S.C. § 644(o) provides that a concern may not be awarded a contract as a small business contractor unless it agrees to perform at least 50 percent of the cost of personnel with its own personnel. Id. at 575–76. The court stated that "Centech's proposal, on its face, did not do that." Id. at 576. The court continued: "As such, Centech's proposal violated the mandate of the Small Business Act, which makes the

prime contractor's agreement to perform 50 percent of the labor costs itself a prerequisite to obtaining the award." Id.

The Court of Federal Claims next stated that GAO had "correctly determined that Centech's proposal was unacceptable because it failed to comply with the LOS clause—a mandatory, material solicitation requirement." Id. The court noted that "under the terms of the solicitation, the percentage of labor costs performed by a prime versus subcontractor impacted an offeror's proposed bottom-line costs, and costs were to be evaluated based upon the model in the RFP." Id. The court reasoned that "[b]ecause the mix of prime subcontractor labor here affected the cost evaluation, compliance with the LOS clause had to be evidenced in offerors' proposals. As such, the LOS clause was implicated in the evaluation and was not simply a matter of post-award contract administration." Id. The court remanded to the Air Force, however, the question of whether Centech was entitled to an award of some portion of its bid and proposal preparation costs due to its reliance on the retracted Policy Memorandum. Id. at 577.

DISCUSSION

I.

Pursuant to 28 U.S.C. § 1491(b)(1), the Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." The statute also provides that the court "shall have jurisdiction to entertain such an action without regard to whether suit is

instituted before or after the contract is awarded." 28 U.S.C. § 1491(b)(1) (2006). In response to a bid protest filed with it, the Court of Federal Claims is empowered to award "any relief that the court considers proper, including declaratory and injunctive relief." Id. § 1491(b)(2). To determine if a permanent injunction is warranted, the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief. PGBA, LLC v. United States, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).

In the exercise of its bid protest jurisdiction, the court reviews agency action "pursuant to the standards set forth in section 706 of title 5" of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–59, 701–06. 28 U.S.C. § 1491(b)(4). Section 706 of the APA provides, in relevant part, that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2006). Under these standards, a reviewing court may set aside a procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). A court reviews a challenge brought on the first ground "to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." Id. at 1332–33 (quotation marks and citations

omitted). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." Id. at 1333 (quotation marks omitted).

We have jurisdiction over an appeal from a final decision of the Court of Federal Claims pursuant to 28 U.S.C. § 1295(a)(3). We review the "court's determination on the legal issue of the government's conduct, in a grant of judgment upon the administrative record, without deference." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). This means that we apply the "arbitrary and capricious" standard of § 706 anew, conducting the same analysis as the Court of Federal Claims. See 28 U.S.C. § 1491(b)(4); Impresa, 238 F.3d at 1332. A party may establish an abuse of discretion "by showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding." PGBA, 389 F.3d at 1223 (quotation marks omitted). A clear error of judgment in weighing the relevant factors or a clearly erroneous fact finding is present when a reviewing court is left with a "definite and firm conviction" that a clear error of judgment or a mistake has been committed. Id. at 1223–24 (quotation marks omitted).

II.

As seen, in soliciting revised proposals for the ARDTEAS contract, the Air Force acted in response to GAO's determination that Centech's original proposal was not acceptable. To be acceptable, a proposal must represent an offer to provide the exact thing called for in the request for proposals, so that acceptance of the proposal will bind the contractor in accordance with the material terms and conditions of the request for proposals. See E.W. Bliss Co. v. United States, 77 F.3d 445, 448 (Fed. Cir. 1996) ("[A]

proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations." (quotation marks omitted)). A subcontracting limitation, including the LOS clause, is a material RFP term and a condition of a solicitation to which the offeror must agree in its proposal. See Chapman Law Firm v. United States, 63 Fed. Cl. 519, 527 (2005), aff'd 163 Fed. Appx. 889 (Fed. Cir. 2006); see also In re Orincon Corp., 97-2 Comp. Gen. (West) ¶ 26, at 4 (July 18, 1997).[4] Compliance with the LOS clause is material because the mix of prime-subcontractor labor affects cost evaluation. See 48 C.F.R. § 14.405 (2008) (defining requirements as immaterial when the effect on price, quantity, quality, or delivery is negligible); see also Blount, Inc. v. United States, 22 Cl. Ct. 221, 228 (1990) (describing the considerable savings achieved by a contractor who subcontracts work). Thus, a proposal that, on its face, leads "an agency to the conclusion that an offeror could not and would not comply with the subcontracting limitation" is technically unacceptable and "may not form the basis for an award." Chapman, 63 Fed. Cl. at 527.

On appeal, Centech does not contend that the LOS clause was not a material term of the contract. Rather, it argues that the Court of Federal Claims erred when it concluded that the Air Force acted rationally in following GAO's recommendation to solicit revised proposals for the ARDTEAS contract. According to Centech, the court erred when it determined that, on its face, Centech's proposal indicated that Centech did not agree to comply with the LOS clause. Appellant's Br. at 19. Centech reasons

---

[4] While not binding authority on this court, the decisions of the Comptroller General are instructive in the area of bid protests. See Che Consulting, Inc. v. United States, No. 2007-5172, 2008 WL 5397566, at *4 (Fed. Cir. Dec. 30, 2008); Planning Research Corp. v. United States, 971 F.2d 736, 740 (Fed. Cir. 1992).

that it agreed to comply with the LOS clause when it submitted its proposal because its proposal was submitted in response to the RFP as supplemented by the later-retracted Policy Memorandum: "Centech proposed to perform less than 50% of the contract labor only because the Air Force invited this when it made [the] Policy Memorandum part of the RFP. This cannot be fairly characterized as a refusal, failure, or inability by Centech to comply with the LOS clause." Id. at 23. Centech contends that, under these circumstances, the case did not present an issue of proposal acceptability; rather, it presented an issue of offeror responsibility. Id. at 20–21. This meant, Centech asserts, that GAO and the Air Force "should have deferred to the SBA, and its exclusive area of jurisdiction under [the Small Business Act,] to render small business responsibility determinations as part of its COC review process." Id. at 25. Centech notes that, when the SBA did evaluate Centech's proposal, it found Centech to be responsible. Id. at 30. Centech argues that the Air Force irrationally ignored that responsibility determination and followed GAO's independent finding of unacceptability. Id. at 30. Accordingly, Centech concludes that the Court of Federal Claims abused its discretion in denying declaratory and injunctive relief.

Tybrin and the government respond that the Court of Federal Claims did not err in denying Centech's request for declaratory and injunctive relief. They contend that the Air Force rationally acted upon the determination of GAO that Centech's proposal was unacceptable for failure to comply with the LOS clause. Tybrin's Br. at 26; Government's Br. at 17. They argue that the Air Force was not barred from finding Centech's proposal unacceptable simply because the SBA determined that Centech was responsible. Tybrin's Br. at 32, 41; Government's Br. at 22.

III.

We have stated that "a procurement agency's decision to follow [GAO's] recommendation even though that recommendation differed from the contracting officer's initial decision was proper unless [GAO's] decision itself was irrational." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989). In this case, we agree with the Court of Federal Claims that the Air Force acted properly when it followed GAO's recommendation to solicit revised proposals for the ARDTEAS contract. Centech submitted a proposal that, on its face, showed that Centech was not agreeing to incur by itself "[a]t least 50 percent of the cost of contract performance . . . for personnel," as required by the LOS clause.

Pursuant to 31 U.S.C. § 3554(b)(1), GAO is required to recommend that an agency take specific corrective action if an award does not comply with a statute or regulation, including terminating the contract and awarding a contract consistent with the requirements of the statute and regulations. See Honeywell, 870 F.2d at 648. In Orincon, GAO noted that, "[a]s a general matter, an agency's judgment as to whether a small business offeror will comply with the subcontracting limitation is a matter of responsibility, and the contractor's actual compliance with the provision is a matter of contract administration." 97-2 Comp. Gen. (West) at 4. GAO further stated: "However, where a proposal, on its face, should lead an agency to the conclusion that an offeror could not and would not comply with the subcontracting limitation, we have considered this to be a matter of the proposal's technical acceptability." Id. Since Centech's proposal did not offer to provide what the RFP requested, it was not responsive to the RFP. It therefore was unacceptable and could not serve as the basis for contract

award. Under these circumstances, GAO's recommendation to solicit revised proposals for the contract plainly was rational. It therefore was proper for the Air Force to follow GAO's recommendation.

Our conclusion is not changed by the fact that, in structuring its proposal, Centech apparently relied upon the later-retracted Policy Memorandum. The Air Force Material Command could not, through the Policy Memorandum, alter the requirements of the LOS clause, which was mandated by statute and regulation. See United States v. Amdahl Corp., 786 F.2d 387, 392–93 (Fed. Cir. 1986) ("Administrative actions taken in violation of statutory authorization or requirement are of no effect."); cf. Lyng v. Payne, 476 U.S. 926, 937 (1986) (noting that "not all agency publications are of binding force" and that "an agency's power is no greater than that delegated to it by Congress"). In short, the Policy Memorandum could not override the LOS clause. We thus reject Centech's argument that the presence of the Policy Memorandum (prior to its retraction) meant that Centech submitted a proposal which reflected agreement to comply with the LOS clause.

We take due notice of the procurement regulation at 48 C.F.R. § 19.601(d) and the SBA regulation at 13 C.F.R. § 125.6(f). The former provides that "[w]hen a solicitation requires a small business to adhere to the limitations on subcontracting, a contracting officer's finding that a small business cannot comply with the limitation shall be treated as an element of responsibility and shall be subject to the COC process." 48 C.F.R. § 19.601(d). The latter provides that "[c]ompliance [with the LOS clause is] considered an element of responsibility and not a component of size eligibility." 13 C.F.R. § 125.6(f). Centech cites these regulations in making its argument that GAO and

the Air Force should have deferred to the SBA's determination that Centech would comply with the LOS clause. These two regulations do not change the result in this case, however. The reason is that, as GAO stated in its decision, the issue was not whether Centech <u>could</u> comply with the requirements of the LOS clause—the matter to which § 19.601(d) is directed. <u>See</u> 19 C.F.R. § 19.601(d) (referring to "a contracting officer's finding that a small business <u>cannot</u> comply with the [subcontracting] limitation" (emphasis added)). Rather, the issue was whether, in its proposal, Centech agreed that it <u>would</u> comply with the requirements of the LOS clause.[5] The record fully supports GAO's determination that, in its proposal, Centech did not agree to comply with the clause. The Air Force acted rationally in following GAO's recommendation based upon that determination.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims denying Centech's request for declaratory and injunctive relief.

## COSTS

Each party shall bear its own costs.

<u>AFFIRMED</u>

---

[5]    We recognize the SBA regulation's statement that "[c]ompliance [with the LOS clause is] considered an element of responsibility and not a component of size eligibility." 13 C.F.R. § 125.6(f). We are not prepared to read this statement as being contrary to the settled rule that, in order for a proposal to be acceptable, the proposal must reflect agreement to provide what is required by the request for proposals, especially since the regulation simply refers to "compliance" with the clause. Moreover, the statement is in a subsection of the SBA regulation that states a small business "must agree" to comply with the LOS clause. <u>See</u> <u>id.</u> § 125.6(a)(1).