# United States Court of Appeals for the Federal Circuit

———————————

**COLONIAL PRESS INTERNATIONAL, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2014-5036

———————————

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00403-MBH, Judge Marian Blank Horn.

———————————

Decided: June 10, 2015

———————————

ANTHONY HAWKS, Hawks Law Office, Alexandria, VA, argued for plaintiff-appellant.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

———————————

Before LOURIE, PLAGER, and WALLACH, *Circuit Judges.*

PLAGER, *Circuit Judge.*

INTRODUCTION

This is a post-award bid protest case. Of the two questions raised, one is of first impression in this court—whether the Government Printing Office ("GPO"),[1] before declining to award a contract to a small business concern, must, as part of its bid-evaluation process, refer the responsibility determination to the Small Business Administration ("SBA"). The other question is a familiar one—whether the deciding official's determination was arbitrary or capricious as tested by the law relating to contract awards.

Because we decide that the GPO is not required to refer such determinations to the SBA, and because we decide that the GPO's actions in awarding the contract at issue in this case were not arbitrary or capricious, we affirm the judgment of the United States Court of Federal Claims.

BACKGROUND

*GPO Bid Solicitation and Award*

In June 2012, the GPO issued an invitation for bids for a printing order for the Department of Health and Human Services–Centers for Medicare and Medicaid Services ("HHS"). The printing order involved the production of sixty-three versions of English and Spanish separate-covered, perfect bound publications entitled "Medicare and You" in English, and "Medicare y Usted" in

---

[1] The GPO is now the Government Publishing Office. *See* Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 1301, 128 Stat. 2130, 2537 (2014).

Spanish. The contract was for a term beginning on the date of award and ending on January 31, 2014, with four optional twelve-month extension periods.

The GPO received nine bids in response to its solicitation. Appellant Colonial Press International, Inc. ("Colonial Press") was the lowest bidder with a discounted bid of $2,418,443.54, while Fry Communications, Inc. ("Fry Communications") was the second lowest bidder with a discounted bid of $2,502,545.05. Colonial Press was a small business concern for purposes of the Small Business Act, 15 U.S.C. §§ 631 *et seq.* ("Act").

As part of its solicitation and evaluation process, the GPO followed the protocols in its Printing Procurement Regulation ("PPR"), found in GPO Publication 305.3 (Rev. 2-11). Under the PPR, the GPO can award contracts only to "responsible" bidders. A responsible bidder must meet certain minimum standards:

> Prospective contractors must affirmatively demonstrate their responsibility. This may be achieved through satisfactory performance on prior similar awards or through the presentation of evidence of their ability to satisfy the contract requirements. A Contracting Officer, prior to making an affirmative responsibility determination, shall be satisfied that the available information sufficiently demonstrates that the prospective contractor meets the minimum standards set forth in subsection 4.

PPR, Ch. I, § 5.5(a).

> As part of the minimum standards, a bidder must:
>
> (b) be able to comply with the proposed delivery schedules, taking into consideration other existing commitments, commercial as well as governmental;

(c) have a satisfactory record of performance in regard to both quality and timeliness on previously awarded contracts.

*Id.* § 5.4.

If these standards are not met, or if there is doubt as to the bidder's productive capacity or financial strength that cannot be resolved affirmatively, then the bidder must be deemed non-responsible. *Id.* § 6.

Determinations of non-responsibility with respect to contracts worth more than $100,000 must be documented in a Determination and Findings ("D&F") document. *Id.* § 6(a). The D&F:

> constitutes a special form of approval or exercise of judgment required as a prerequisite to taking certain actions by procurement officials. A D&F must stand alone on its own merits and should ideally be confined to a single page, containing all available findings, concisely stated, to support the determination.

*Id.* § 3.5(a).

In Colonial Press's case, and in accordance with the PPR, the GPO reviewed Colonial Press's compliance history with respect to past GPO contracts. The GPO prepared a Preaward Survey relevant to Colonial Press's responsibility, including information on its performance history, quality samples, program history, correspondence history, and investigation factors.

The Preaward Survey included a performance history covering the prior thirteen months, on a month-by-month basis. Over the thirteen-month period, Colonial Press was late on just under 6% of the deliveries. During the three months prior to the date of solicitation, Colonial Press had three late deliveries in November (33% of

deliveries were late in this month), zero in December, and zero in January.

While preparing the Preaward Survey for Colonial Press, the GPO contacted Colonial Press and requested an explanation for the late deliveries and notification of any corrective measures that may have been taken to avoid such delays in the future. Colonial Press's contract manager Chris Seruga ("Seruga") responded on the same day with explanations.

On February 13, 2013, the GPO contracting officer signed the Preaward Survey for Colonial Press and included a recommendation of no award. The contracting officer set forth the rationale in support of her determination in a D&F document. On the same day, the contracting officer signed the Preaward Survey for Fry Communications with a recommendation of award.[2]

The next day, the contracting officer wrote a letter to Colonial Press stating that it was found non-responsible. On February 20, 2013, the contracting officer awarded the contract and issued a purchase order to Fry Communications. On the same day, Seruga informed the GPO that one of Colonial Press's late deliveries was actually on-time; however, the GPO responded that:

> Because of the weighted critical delivery schedules mandated by Congress, the remaining incidents where Colonial Press was delinquent on contracted deliveries was sufficient evidence to support finding Colonial Press non-responsible for such a high-profile Term Contract for the Medicare Handbooks.

---

[2]  The GPO performed a Preaward Survey for Fry Communications, showing that over the prior thirteen months Fry Communications had zero late deliveries.

J.A. 16.

*GAO Protest and the Question of SBA Referral*

Under 31 U.S.C. § 3552, a disappointed bidder for a government contract may appeal the decision of the agency by filing a protest with the Government Accountability Office ("GAO"). On February 22, 2013, Colonial Press filed its protest with the GAO. Colonial Press alleged that the GPO's determination of Colonial Press's non-responsibility constituted an abuse of discretion. Colonial Press also argued that the responsibility determination should have been referred to the SBA. The GAO, upon receipt of the protest, inquired of the SBA whether the GPO, a Legislative branch agency and not a part of the Executive branch, was nevertheless subject to the requirements of the SBA Certificate of Competency Program ("COC Program") under provisions of the Small Business Administration Act, specifically 15 U.S.C. § 637(b)(7).

Under the SBA's COC Program, a "Government procurement officer" may not preclude a small business concern from being awarded a "Government contract" due to non-responsibility without referring the matter to the SBA for a final disposition. *See* 15 U.S.C. § 637(b)(7); 13 C.F.R. § 125.5. The SBA may thereafter issue a certificate of competency to a particular Government contracting officer certifying that a small business concern is responsible with respect to a particular Government procurement contract. 13 C.F.R. § 125.5.

On March 15, 2013, the SBA responded to the GAO inquiry stating that "based upon our review of the law in this area we believe the requirements of the COC program could, arguably, apply to GPO and other non-executive agencies." The SBA also stated that:

> It is SBA's view that an open question exists as to whether the requirements of the COC program

apply to GPO. While requirements for compliance with most of SBA's small business programs are generally not extended to non-executive branch agencies, the statutory provision creating the COC program does not refer to agencies but instead is directed more generally at government procurement officers. As a result, SBA believes it is possible to construe that provision as applying to all procurement officers, regardless of the agency or branch of government for which they work.

J.A. 326.

Referencing *Matter of Downtown Legal Copies*, B-289432, 2002 CPD ¶ 16 (2002) and *Matter of Fry Communications*, 62 Comp. Gen. 164 (1983), the SBA recognized that the GAO had previously found that the referral requirements of § 637(b)(7) did not apply to the GPO, but, nevertheless, the SBA distinguished those decisions:

Those decisions focused broadly on the definition of 'agency' in § 632(b) and used that as a basis for reaching the sweeping conclusion that no portion of the Small Business Act applies to any legislative branch agency. Those decisions do not go any further than a consideration of § 632(b) and do not examine the actual wording employed by Congress in drafting § 637(b)(7)(A). As such, SBA questions whether they are dispositive in this instance.

J.A. 325–26.

Shortly thereafter, and after reviewing the SBA report to the GAO, the GPO submitted the agency's views to the GAO. The GPO stated "'the contracting officer had a reasonable basis to conclude that the Colonial past performance, especially the performance of Colonial in the last quarter of 2012, caused her to have doubt about the ability of Colonial to meet the stringent, constant, month-

to-month demands of Program 199S [*sic*] for on time high volume production.'" J.A. 17 (citation omitted). The GPO "'concluded that nothing in the comments from the SBA changes the well-reasoned determination by GAO more than thirty years ago that procurements of GPO are not subject to the Small Business Act.'" *Id.* (citation omitted).

On May 6, 2013, the GAO denied Colonial Press's bid protest, along with another protest not at issue in this appeal. The GAO found that the GPO was not subject to the referral requirements of the SBA's COC Program, and determined that the contracting officer had a reasonable basis for her determination of non-responsibility.

### *Trial Court and Appeal*

After losing at the GAO, Colonial Press filed a post-award bid protest in the United States Court of Federal Claims, pursuant to 28 U.S.C. § 1491(b). Colonial Press argued that the GPO's award was improper because the GPO failed to refer the responsibility determination to the SBA, and because the GPO's responsibility determination was arbitrary and capricious and lacked a rational basis.

After determining it had jurisdiction, the trial court held that the GPO did not violate the referral requirements of 15 U.S.C. § 637(b)(7), and that the GPO's responsibility determination was not arbitrary or capricious and did not lack a rational basis. The trial court denied Colonial Press's motion for judgment on the pleadings, and granted the United States's ("Government") motion for judgment on the administrative record.

Colonial Press appealed the trial court's decision to this court. Appellant essentially raises the same two issues on appeal—whether the GPO was required to refer the responsibility determination to the SBA, and whether the GPO's responsibility determination and award of the contract to Fry Communications was arbitrary or capricious or lacked a rational basis.

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

### DISCUSSION

We review the trial court's judgment on the administrative record without deference. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). We reapply the standard of 5 U.S.C. § 706 to determine whether the GPO's action in awarding the contract was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See id.*

In *Allied Technology Group, Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011), we said:

> The plaintiff-appellant must show that the Contracting Officer's award "lacked a rational basis," *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009), or "violates to prejudicial effect an applicable procurement regulation," *CACI Field Servs., Inc. v. United States*, 854 F.2d 464, 466 (Fed. Cir. 1988). The test under the first ground is "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Centech*, 554 F.3d at 1037. The test under the second ground is whether the disappointed bidder has shown "a clear and prejudicial violation of applicable statutes or regulations." *Id.* To show prejudice, the protestor must show that "but for the alleged error, there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration." *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996) (internal citations omitted).

## I.

### *The GPO Was Not Required to Refer the Responsibility Determination to the SBA*

We begin with the language of that part of the Small Business Act that relates to this question:

> It shall also be the duty of the [Small Business] Administration and it is empowered, whenever it determines such action is necessary— . . . (7)(A) To certify to *Government procurement officers*, and officers engaged in the sale and disposal of Federal property, with respect to all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern or group of such concerns to receive and perform a specific *Government contract*. A *Government procurement officer* or an officer engaged in the sale and disposal of Federal property may not, for any reason specified in the preceding sentence preclude any small business concern or group of such concerns from being awarded such contract without referring the matter for a final disposition to the [SBA].

15 U.S.C. § 637(b)(7) (italics added).

The question of whether the GPO was required to refer the responsibility determination to the SBA turns upon the definitions of "Government procurement officer" and "Government contract."

If these terms are defined broadly, then § 637(b) could require *any* government procurement officer, including officers in the Legislative and Judicial branches, to refer

responsibility determinations to the SBA.[3]  If these terms are defined narrowly, then § 637(b) could be limited to certain categories of government procurement officers, specifically those in the Executive Branch, and, as a result, only certain officers would be required to refer responsibility determinations to the SBA.

We do not construe statutes in a vacuum, and "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *accord FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000).

Similarly, we do not read the Small Business Act as "a series of unrelated and isolated provisions," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995).  We "must consider not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme."  *Barela v. Shinseki*, 584 F.3d 1379, 1383 (Fed. Cir. 2009) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)).  "Statutory interpretation is 'not guided by a single sentence or member of a sentence, but look[s] to the provisions of the whole law.'"  *Hawkins v. United States*, 469 F.3d 993, 1000-01 (Fed. Cir. 2006) (quoting *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35, (1990)).

We observe that neither of the specific terms "Government procurement officer" nor "Government contract"

---

[3]    Colonial Press proposes to avoid this categorical distinction analysis by suggesting that a referral to the SBA by GPO procurement officers should be required when evaluating contracts awarded *on behalf of executive agencies*, which are themselves subject to § 637(b)(7).  *See* Appellant's Reply Br. at 17 n.4.  We find this an unpersuasive dodge of the basic issue.

is defined in § 637(b) or in any section of the Small Business Act. However, an examination of the statutory scheme reveals that Congress defined related terms that cast light on how these particular terms should be understood.

In 15 U.S.C. § 637c(3), a "Government procurement contract" is defined as "any contract for the procurement of any goods or services by any Federal agency." A "Federal agency" has "the meaning given the term 'agency' by section 551(1) of Title 5, but does not include the United States Postal Service or the Government Accountability Office." *Id.* § 637c(2). The terms "Federal agency" and "agency" are also separately defined in § 632(b):

> For purposes of this chapter [(Ch. 14A of U.S. Code, Title 15, which includes § 637(b)(7))], any reference to an agency or department of the United States, and the term "Federal agency", shall have the meaning given the term "agency" by section 551(1) of Title 5, but does not include the United States Postal Service or the Government Accountability Office.

In turn, 5 U.S.C. § 551(1) provides that:

> For the purpose of this subchapter [(Subch. II of Ch. 5 of U.S. Code, Title 5)]— (1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include— (A) the Congress . . . .

The GPO is a legislative agency under the direction and control of Congressional administration. *See United States v. IBM Corp.*, 892 F.2d 1006, 1009 (Fed. Cir. 1989). Although we have not previously examined the issue, we agree with our sister circuit that "Congress" in § 551(1) refers to legislative agencies and departments generally. *See Mayo v. United States Gov. Printing Office*, 9 F.3d

1450, 1451 (9th Cir. 1993) (determining the GPO is a unit of Congress and therefore contained within the term "Congress" in § 551(1)).

Therefore, we agree with both parties that the GPO, as a legislative agency, is excluded from the definition of 'agency' in 5 U.S.C. § 551(1).

Colonial Press takes exception to the above analysis and contends that the definitions of "Government procurement contract," "Federal agency," and "agency" are irrelevant because those terms do not appear in § 637(b)(7). Colonial Press also argues that § 637c does not apply to the Small Business Act as a whole. Instead, Colonial Press believes that § 637c only applies to the act which contained it—An Act to Amend the Small Business Act and the Small Business Investment Act of 1958, Pub. L. 95-507, 92 Stat. 1757 (1978) ("1978 Amendments"). Colonial Press argues that § 637c's language "[f]or purposes of this Act" limits its applicability to the 1978 Amendments only—and not § 637(b)(7).

However, if we were to adopt Colonial Press's reasoning, we would interpret "Government procurement contracts" to exclude contracts solicited by legislative agencies in some portions of the Act, while interpreting "Government procurement officers" to include contracting officers of those same legislative agencies in another portion of the Act—namely, § 637(b)(7). We agree with the Government and the trial court that this is an unreasonable and untenable construction.

Colonial Press's analysis clashes with our "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Mich. Dep't of Treasury*, 489 U.S. at 809; *accord Brown & Williamson Tobacco Corp.*, 529 U.S. at 132-33.

In this light, we construe "Government contract" and "Government procurement officer" to limit those terms to exclude contracts and contracting on behalf of legislative agencies such as the GPO, regardless of whether such agencies are contracting for executive agencies. (*See* note 3, *supra.*)

Moreover, though not dispositive, we note that the GAO, GPO, and SBA have interpreted the Small Business Act consistently since 1983 with our interpretation, i.e., that the GPO is not subject to the SBA's COC Program referral requirements. *See* J.A. 38–40, 388; *Fry Commc'ns, Inc.*, 62 Comp. Gen. 164, 167 (1983) (finding the GPO was not subject to the Small Business Act).

Similarly, in *Gray Graphics Corp. v. United States Government Printing Office*, No. 82-2890, 1982 U.S. Dist. Lexis 18378, at *8 (D.D.C. Dec. 20, 1982), the district court, relying in no small part on an affidavit from SBA Associate General Counsel, held that the GPO is not subject to the Small Business Act because the SBA "itself does not now and has never regarded the GPO to be subject to its jurisdiction." *See also Udall v. Tallman*, 380 U.S. 1, 18 (1965) ("'[T]he practical constructions given to an act of Congress, fairly susceptible of different constructions, by those charged with the duty of executing it is entitled to great respect and, if acted upon for a number of years will not be disturbed except for cogent reasons.'") (quoting *McLaren v. Fleischer*, 256 U.S. 477, 480–81 (1921)).

The SBA's memorandum, cited above and written in the context of the GAO bid protest, that the COC referral process "could, arguably" apply to the GPO does not affect our analysis. J.A. 324. The statement as thus qualified by the SBA is true; it does not aid, however, in the ultimate determination of the question of whether it should be so interpreted.

## II.

### *The GPO's Award Did Not Violate 5 U.S.C. § 706*

Finally we turn to Colonial Press's other argument on appeal, whether the GPO's award lacked a rational basis. *See Centech*, 554 F.3d at 1037.

Colonial Press's primary argument is that the D&F lacks a rational basis because it focused on three months of performance history instead of a longer period with a lower rate of late deliveries and because, despite Seruga's explanations, the D&F stated there was no evidence that would lead the GPO to believe performance would improve. Colonial Press asserts the contracting officer failed to carefully consider all information as required by PPR, Ch. I, § 5.6.

Colonial Press also argues that the trial court erred—and this court would err—by relying on material outside the D&F to provide a rational basis since the D&F must "stand alone" under PPR, Ch. I, § 3.5(a). But Colonial Press admits a court may consult the administrative record to ensure that the D&F findings are supported.

We do not agree with Colonial Press's reasoning. The contracting officer's reference to the three-month period instead of the thirteen-month period does not deprive the agency's decision of a rational basis nor is it sufficient to overcome the wide discretion afforded to agencies in making responsibility decisions. *See John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 1999) ("Because responsibility decisions are largely a matter of judgment, contracting officers are generally given wide discretion to make this decision.").

In either the three-month or thirteen-month period, Colonial Press had late deliveries while Fry Communications had zero late deliveries. The contracting officer was required to consider PPR, Ch. I, § 5.4 and, based on Colonial Press's past performance and Seruga's evidence,

the GPO determined that it had "no evidence that the contractor has taken any actions that would lead us to believe that their [*sic*] performance will improve." J.A. 348. The ability to comply with proposed delivery schedules was an important and mandatory consideration for the contracting officer. Merely because some explanation was provided for Colonial Press's late deliveries does not mean the contracting officer was required to accept these explanations, nor did it change Colonial Press's historical past performance. Instead, the contracting officer had discretion to state that, after considering the evidence on both sides, she found the bidder non-responsible.

Similarly, to the extent Colonial Press argues there were violations of applicable procurement regulations with prejudicial effect, Colonial Press fails to show there was an actual violation. *See Centech*, 554 F.3d at 1037. Colonial Press alleges no violation of PPR, Ch. I, § 3.5 by the contracting officer, and Colonial Press's argument that § 5.6 was violated is unpersuasive.

We will not substitute our own judgment for that of the agency in this matter. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The contracting officer was within her discretion to reject the explanations provided by Colonial Press as insufficient to allay her concerns in the responsibility determination.

We decline to address whether the PPR somehow precluded the trial court from relying on evidence within the administrative record but outside the D&F—even if that were the case, which we do not hold, the issue is moot because there was sufficient rational basis provided by the D&F itself. There was no need to rely on evidence outside of it. The GPO provided a coherent and reasonable explanation of its exercise of discretion in the D&F itself.

We have considered the other arguments raised on appeal, including potential waiver, and found them unpersuasive.

## CONCLUSION

For the foregoing reasons, the judgment of the United States Court of Federal Claims is affirmed.

**AFFIRMED**