NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JACQUELINE SIMS, DBA JRS STAFFING SERVICES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1661

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00367-NBF, Senior Judge Nancy B. Firestone.

---

Decided: July 8, 2016

---

JACQUELINE SIMS, Lawrenceville, GA, pro se.

MICHAEL ANTHONY RODRIGUEZ, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before PROST, *Chief Judge,* NEWMAN and BRYSON, *Circuit Judges.*

PER CURIAM.

Jacqueline Sims appeals a final decision of the Court of Federal Claims denying her bid protest. We affirm.

## I

## A

On September 19, 2014, the Bureau of Prisons ("BOP") issued a solicitation for horticulture instructional services at the Federal Prison Camp in Alderson, West Virginia ("FPC Alderson"). The solicitation was designated as a small business set-aside contract. It required an instructor to provide classes at FPC Alderson with a regular work schedule from 8 a.m. to 2:30 p.m., five days a week. The contract was to be for one base year and four option years. The solicitation indicated that pursuant to an affirmative determination of responsibility, the offers would be evaluated to determine which quotation was most advantageous to the government, "considering technical capability, past performance, and price."

On October 17, 2014, Ms. Sims submitted a quotation in response to the solicitation through her sole proprietorship, JRS Staffing Services. Two other bidders also submitted quotations, including Mr. Arbaugh, who was at that time the horticulture instructor at FPC Alderson. In her quotation, Ms. Sims indicated that she would offer the current instructor a right of first refusal to perform the services should she be awarded the contract. If he were to decline, Mr. Sims proposed a candidate with significant experience working on dairy farms.

The contracting officer evaluated Ms. Sims's offer on the basis of technical capability, past performance, and price. The officer determined that her quotation conformed to the solicitation; her past performance history

was neutral, as she had not performed contracts similar in nature, size, and scope to the horticulture instruction contract; and that Ms. Sims's quote was the lowest cost quote of the three received. However, the contracting officer found that Ms. Sims did not satisfy the "responsibility" requirement because she lacked the capacity to complete performance if offered the contract. In support of that determination, the contracting officer made several findings.

First, the contracting officer found that Ms. Sims had failed to accept an offered award of a contract for cosmetology instruction services at FPC Alderson in 2012. On that occasion, Ms. Sims was offered a contract on March 30, 2012, with an effective date to begin performance on April 9, 2012. The contracting officer told Ms. Sims that because the cosmetology program had been halted, the prison was anxious to complete a contract and resume instruction. Three days after the award, Ms. Sims indicated that she had not finalized the insurance needed to begin work on the contract and would complete that process within a week. One week later, on April 10, 2012, Ms. Sims informed the contracting office that she had still not secured insurance and that she intended to accept the contract offer once the insurance arrangements were finalized. On April 13, Ms. Sims informed the contracting officer that she had not been able to secure insurance on the private market and that she would seek it from a state program. She estimated it would take two more weeks to get an insurance policy. On April 16, the contracting officer withdrew the award.

Second, the contracting officer noted that Ms. Sims had failed to accept a contract offer in October 2014 for culinary arts instruction at the Federal Correctional Institution in Tallahassee, Florida. On September 29, 2014, after being awarded a contract offer by the BOP, Ms. Sims expressed concerns about being able to find a replacement candidate with the required qualifications

should her preferred candidate resign during the contract. The contracting officer promptly responded that the requirements would not be changed and told Ms. Sims to respond by the close of business on September 30 if she was still interested in the contract. After receiving no response from Ms. Sims by the deadline, the contracting officer rescinded the offer to Ms. Sims and offered it to the next highest bidder.

Third, a company managed by Ms. Sims, Jacqueline R. Sims L.L.C., dba JRS Management, was awarded a contract to provide culinary arts instruction at the Federal Correctional Institution in Miami, Florida. Her company failed to provide a candidate during the base year, and the contract was terminated.

Finally, the contracting officer noted that Ms. Sims had previously been referred to the Small Business Administration for a Certificate of Competency and that the referral had been declined.

Based on those findings, the contracting officer determined that Ms. Sims would not be able to comply with the required performance schedule under the contract and made a determination of non-responsibility. On January 29, 2015, the contracting officer referred Ms. Sims to the Small Business Administration ("SBA") to seek a Certificate of Competency ("COC").

B

After the referral to the SBA, Ms. Sims submitted an application for a COC. Her submission included information about her companies, the names of candidates she was considering for the horticulture position, and a history of her previous contracts.

An SBA procurement analyst reviewed Ms. Sims's submissions and made findings about her capacity to perform. He found that Ms. Sims and her LLC had completed 12 contracts in the three prior years, primarily for

religious services, and that she and her LLC were engaged in five ongoing contracts. He also found 13 instances in which the government had made an offer for an award that Ms. Sims did not accept, or in which the contract was later terminated. He noted that Ms. Sims indicated that in most of those cases the reason she had not accepted the award was that the terms of the award were different from the terms of the solicitation. The analyst found that Mr. Sims had no current employees suited for the position at FPC Alderson, but that the two candidate instructors for whom Ms. Sims submitted resumes for appeared to be qualified.

As part of its investigation, the SBA contacted three contracting officers who had dealt with Ms. Sims in the past. The first stated that Ms. Sims had filed protests relating to four solicitations and one contract, and that she had been offered another contract but had not accepted it. The second officer verified that Ms. Sims had two contracts currently open—one ongoing and the other not yet started. That officer did not have any comments on Ms. Sims's performance. The third officer described her as "aggravating, unreasonable, argumentative and litigious" during negotiations, and said that he did not exercise an option on one of her contracts because she demanded a modification of the contract so that she would not be liable if an instructor failed to meet the terms of the contract.

Based on all of those findings, the procurement analyst recommended that the SBA not issue Ms. Sims a COC. The analyst specifically noted that she had no experience in the past three years completing a contract for instruction other than for religious services, that she did not have any current employees with the requisite skills, that she did not perform on 25 percent of the contracts offered to her, and that she had difficulty resolving administrative issues that arose in the contracting process.

An SBA review committee voted to decline the COC. The SBA informed Ms. Sims that her COC had been declined, and the BOP then offered the horticulture contract to the next lowest bidder, Mr. Arbaugh.

C

Ms. Sims filed a bid protest in the Court of Federal Claims. She argued that the contracting officer's non-responsibility decision and referral to the SBA was arbitrary and capricious, primarily because it was based on information improperly considered. She also argued that the SBA's denial of a COC was arbitrary and capricious.

The Court of Federal Claims found that the contracting officer's decision was neither arbitrary nor capricious, and that the contracting officer properly relied on available information about Ms. Sims's ability to perform the contract, including her prior performance record. The court also found that the SBA had acted rationally and had properly considered the available evidence.

II

We review the trial court's judgment on the administrative record without deference. *Colonial Press Int'l, Inc. v. United States*, 788 F.3d 1350, 1355 (Fed. Cir. 2015). The challenger must show that the contracting officer's decision lacked a reasonable basis and that the contracting agency failed to provide "a coherent and reasonable explanation of its exercise of discretion." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004). "Because responsibility decisions are largely a matter of judgment, contracting officers are generally given wide discretion to make this decision." *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. (1999). We review the SBA's denial of a COC by the same standard. *See* 5 U.S.C. § 706.

A

We conclude that the contracting officer had a reasonable basis for his non-responsibility determination. To be determined responsible, a contractor must "[b]e able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments." 48 C.F.R. § 9.104-1(b). In this case, the contracting officer rationally based his decision on Ms. Sims's history of failing to accept offers after submitting bids. By making bids and then failing to accept contract offers after protracted negotiations, Ms. Sims caused delays in agency procurement. It was rational for the contracting officer to take that history into account and determine that it was likely she would be unable to comply with the proposed delivery schedule.

Ms. Sims argues that it was improper for the BOP to consider her failure to accept the contract for culinary arts instruction at Federal Correctional Institute Miami because there was no information on the BOP's record substantiating her failure to accept. That argument is meritless. A letter explaining the details of the FCI Miami contract was in the record before the BOP.

Ms. Sims argues that there was no evidence on the record that she was associated with Jacqueline R. Sims LLC. Setting aside that Ms. Sims and her LLC share the same name, the affiliation is evidenced by the letter that contained the details about the FCI Miami contract.

She next argues that the BOP acted irrationally because it treated her failure to accept offers as indicative of non-responsibility when she was free reject them as a matter of contract law. While she is correct that she was legally free to reject the offers, it does not follow that it was improper for the government to consider her history in making a responsibility determination. Serially bidding for contracts and failing to accept offers, as Ms. Sims

has done, delays the ability of the government to obtain needed services on a timely basis, and it was therefore reasonable for the contracting officer to take that conduct into account.

Ms. Sims also argues that the BOP contracting officer was mistaken when he said that Ms. Sims had previously been referred to the SBA for a COC and that a COC had been denied. The record shows that, after she was referred for a COC, she failed to submit a timely application, and the SBA then closed the matter without making a determination. In that regard, Ms. Sims is correct that the contracting officer mischaracterized the nature of the SBA's action. However, the fact that the contracting officer was mistaken as to one of the grounds that he cited for his decision does not mean that his decision as a whole necessarily lacked a rational basis. "We do not reverse simply because there are uncertainties, analytic imperfections, or even mistakes in the pieces of the picture petitioners have chosen to bring to our attention, . . . but only when there is such an absence of overall rational support as to warrant the description 'arbitrary or capricious.'" *Ctr. for Auto Safety v. Peck*, 751 F.2d 1336 (D.C. Cir. 1985). The contracting officer relied on multiple factors, including several instances in which Ms. Sims did not accept offered contracts, and those factors make his decision as a whole rational. In context, the inaccuracy in the characterization of the SBA's action regarding the prior COC referral was not so significant as to render the contracting officer's decision arbitrary or capricious.

## B

We also conclude that the SBA had a reasonable basis to deny Ms. Sims a COC. The SBA obtained information from government agencies having prior dealings with Ms. Sims. It reviewed her past performance on other contracts, and it noted the high percentage of offers that she had failed to accept. She has not shown that either the

SBA's process or its decision on the merits of the COC denial was arbitrary and capricious.

Ms. Sims argues that it was improper for the SBA to consider the fact that she did not employ an individual who was qualified to serve as a horticulture instructor. We disagree. Given Ms. Sims's history of failing to provide qualified instructors after being offered contracts, it was reasonable for the SBA to take into account that she neither employed any qualified instructors nor had binding commitments from them. She argues that this failure is excused because she was required to offer the contract to the incumbent, Mr. Arbaugh, under a provision of the Federal Acquisition Regulations prohibiting the displacement of qualified workers. *See* 48 C.F.R. § 52.222-17. However, even if the contract required her to give Mr. Arbaugh a right of first refusal, it was reasonable for the SBA to consider the fact that she lacked contingent commitments from any other qualified candidates in the event that Mr. Arbaugh refused her offer.

Ms. Sims next argues, as she did regarding the contracting officer's non-responsibility determination, that the SBA erred by considering offers that did not ripen into contracts, as she was free to decline them. As discussed above, while she was free as a matter of contract law to decline the offers, the fact that she did so frequently speaks to her reliability as a potential contracting party, and it was rational for the SBA to take that past conduct into account.

Finally, Ms. Sims argues that the SBA should not have considered her previous business dealings because they were not sufficiently similar to the horticulture instruction contract. She also argues that the SBA should not have considered the fact that she had limited experience completing contracts other than for religious services. Ms. Sims is incorrect to suggest that the SBA is narrowly constrained with regard to what information it

can consider when it makes a competency determination. The pertinent regulations require an applicant to "include all information and documentation requested by SBA and any additional information which the firm believes will demonstrate its ability to perform on the proposed contract"; the SBA is then entitled to "obtain clarification or confirmation of information provided by the applicant by directly contacting suppliers, financial institutions, and other third parties upon whom the applicant's responsibility depends." 13 C.F.R. § 125.5(d). In addition, the SBA has broad discretion to consider factors bearing on the contractor's responsibility that were not cited by the contracting officer. *Id.* at § 125.5(f). The regulations thus give the SBA substantial latitude in seeking information that could be relevant to a contractor's reliability. Ms. Sims has made no showing that the agency exceeded its authority in this case.

C

The Court of Federal Claims correctly concluded that the contracting officer had a reasonable basis for the determination of non-responsibility and that the SBA had a reasonable basis to deny her a COC.

We have considered Ms. Sims's remaining arguments but find them unpersuasive.

No costs.

**AFFIRMED**